UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JOHN MACDONOUGH,

                    Plaintiff,

     -against-                                  6:15-cv-0643 (LEK/TWD)

MISHELE SPAMAN, *et al.*,

                    Defendants.

_____

## MEMORANDUM-DECISION and ORDER

## I.    INTRODUCTION

      Plaintiff John Macdonough ("Plaintiff") commenced this action against Mishele Spaman ("Spaman"), Code Enforcement Officer for the Town of Frankfort; Joseph Kinney ("Kinney"), Town Supervisor for the Town of Frankfort; and the Town of Frankfort ("Town") (collectively, "Defendants") pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights that arose from a zoning dispute related to equipment being stored on his property. Dkt. Nos. 1; 9 ("Amended Complaint"). Presently before the Court is Defendants' Motion ("Motion") to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. Nos. 13 ("Motion"); 13-1 ("Memorandum"). Plaintiff filed a Response in Opposition and Defendants filed a Reply. Dkt. Nos. 19 ("Opposition"); 20 ("Reply"). For the following reasons, Defendants' Motion is granted in part and denied in part.

## II.    BACKGROUND[1]

In September 2002, Plaintiff purchased a skid steer and dump trailer and contacted Spaman to see if he would be allowed to store this equipment on his property at 114 Hayes Road in Frankfort, New York ("Hayes property"). Am. Compl. ¶ 7. Spaman advised Plaintiff that since this equipment was agricultural in nature, it could be stored on the property in accordance with town zoning law as the Hayes property was within a Residence-Agriculture District ("RA District"). Id. ¶ 8; see also Dkt. No. 9-1 ("Frankfort Town Code § 88-8"). In June 2003, Plaintiff purchased an excavator and again contacted Spaman to determine if this additional piece of equipment could be stored on the Hayes property; Spaman told Plaintiff the storage of this equipment was a permitted use of the property. Id. ¶¶ 10-11. The following purchases were made by Plaintiff in 2005: an excavator and white dump truck in May; a flatbed trailer in June; and a bulldozer in September. Id. ¶ 12. Again, Plaintiff sought advice from Spaman about storing this equipment on the Hayes property and Spaman determined this additional equipment was agricultural equipment and thus complied with town zoning regulations. Id. ¶¶ 13-14. Plaintiff purchased a dump truck in June 2006 and an excavator in November 2006. Id. ¶ 15. Again, Spaman advised Plaintiff that he could store the equipment on the Hayes property. Id. ¶ 16. When Plaintiff's neighbors called Spaman in 2005 and 2006 regarding Plaintiff's storage of the equipment on the property, she informed them that Plaintiff's storage of the equipment on the property was lawful. See id. ¶¶ 13-14, 16-17.

_____

[1] Because this case is before the Court on a motion to dismiss for failure to state a claim, the allegations of the Amended Complaint are accepted as true and form the basis of this section. See Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 408 (2d Cir. 2000); see also Matson v. Bd. of Educ., 631 F.3d 57, 72 (2d Cir. 2011) (noting that, in addressing a motion to dismiss, a court must view a plaintiff's factual allegations "in a light most favorable to the plaintiff and draw[] all reasonable inferences in her favor").

In March 2007, Plaintiff completed the purchase of property located at 2236 Albany Road in Frankfort, New York ("Albany Road"), from Salvatore Piazza ("Piazza"). Id. ¶¶ 22-23. Before closing on the Albany Road property, Plaintiff contacted Spaman to determine if all of the aforementioned equipment could be stored on the property. Id. ¶ 20. Spaman advised through a letter sent to Plaintiff's attorney that the property was located in a RA District and that the equipment could be stored there in compliance with town regulations. Id. ¶¶ 21-22. Plaintiff stated that he was considering starting a tree farm on the Albany Road property, and Spaman said the storage of the equipment would comply with town zoning regulations with or without a tree farm. Id. ¶ 21. Between 2007 and 2009, Plaintiff claims he "never had any issues" with Defendants. Id. ¶ 25. Spaman called Plaintiff in 2009 and told him that she received complaints from Piazza about the equipment stored on the Albany Road property and asked Plaintiff to begin a tree farm as a means of bringing the property into compliance with the regulations of a RA District. Id. ¶ 26. Piazza attended monthly Town Board meetings airing his complaints about the storage of the equipment on the Albany Road property. Id. ¶ 27. Plaintiff advised Spaman that he would begin tree farming efforts "sometime next year." Id.

In June 2010, Spaman advised the Town Board that Plaintiff was not running a landscaping or tree business from the Albany Road property. Id. ¶ 28. Piazza sent an email to Kinney on July 6, 2010, requesting that Plaintiff be prosecuted for the Albany Road property's alleged lack of compliance with local zoning law. Id. ¶ 29. Piazza sent similar emails on August 3, August 28, September 20, and December 29 of that year. Id. ¶¶ 28, 35, 37-38, 42. On July 7, 2010, Spaman served Plaintiff with a Notice and Order to Remedy, later calling Plaintiff to apologize because "she was ordered from 'higher up' to issue" the Notice, even though she believed he was in compliance

with RA District zoning regulations.  Id. ¶¶ 30, 32.

A second Notice and Order was issued to Plaintiff by Spaman in September 2010.  Id. ¶¶ 39-40.  Spaman admitted she was directed by the Town to issue it.  Id.  In pertinent part, the Notice stated that failure to comply would "be punishable by a fine not exceeding two hundred fifty dollars . . . or imprisonment for not more than on year, or both, for each offense.  Each day that such a violation continues shall constitute a separate offense."  Id. ¶ 39.

On December 21, 2010, Spaman served an appearance ticket to Plaintiff for the Albany Street property's noncompliance with RA District zoning regulations.  Id. ¶ 40.  The first violation was noted to have occurred on July 7, 2010.  Id.  Plaintiff planted "hundreds of trees" by April 2011, and planted additional trees between June and October of the same year.  Id. ¶¶ 48, 56, 59-60.  Plaintiff was arraigned on the Information and Complaint in May 2011.  Id. ¶ 48.  Plaintiff sought a special use permit from the Town's Zoning Board of Appeals ("ZBA"), which was denied following a public hearing.  Id. ¶¶ 50-54.

In July 2012, Plaintiff filed an Article 78 Petition in Herkimer County Supreme Court challenging the ZBA's denial of his special use permit application.  Id. ¶ 57.  A decision was rendered on October 25, 2012.  Id. ¶ 63.  The decision stated that as long as the equipment is agricultural equipment, there was no need for a special use permit, and as a result, Plaintiff's application for a special use permit was unnecessary and therefore denied.  Dkt. No. 9-7 ("Article 78 Order") at 8.[2]  Plaintiff believed this decision gave him a protected interest in his right to keep the equipment at the Albany Street property.  Am. Compl. ¶ 158.

Plaintiff states that his success in Supreme Court prompted the Town to retaliate against

_____

[2] The pagination corresponds to the page numbers assigned by ECF.

4

him.  Id. ¶ 166.  After the court's decision in the Article 78 proceeding, Defendants reinitiated criminal prosecution of Plaintiff for his alleged violation of zoning laws, and sought imprisonment, fines at the rate of $250 per day, and "serious legal repercussions."  Id. ¶¶ 70-72.  Defendants prosecuted each day of alleged non-compliance as a separate violation, with Plaintiff facing 1,394 total violations.  Id. ¶¶ 73-74.  During the trial, Spaman "demonstrated that she lacked probable cause to charge Plaintiff," stating she did not remember going to the Albany Street property on the date of the first violation and that Plaintiff "was working with equipment on that property that's allowed."  Id. ¶¶ 76-77.  Spaman also testified that Plaintiff's use of equipment on a tree farm for planting trees is considered an agricultural use and that she was aware Plaintiff planned to plant "[f]ive hundred Christmas trees" in the planting season of 2011 (April-June).  Id. ¶¶ 79, 84.  Spaman stated she was aware of the Supreme Court's decision regarding Plaintiff's farm, but never read it. Id. ¶ 89.  Spaman also testified that her decision to issue a violation Notice and cease and desist order was directed by the Town and their attorney.  Id. ¶ 115.  Spaman stated she was directed by the Town to cite Plaintiff for violations.  Id. ¶ 116.

Plaintiff was found not guilty by a jury of his peers.  Id. ¶ 90.  Plaintiff was the first person in the Town's history to have a jury trial on a zoning matter "because of the amount of jail time Defendants were asking the Court to impose."  Id. ¶ 99 n.1.  Plaintiff appeared in court at least nine times, including for a three-day jury trial.  Id. ¶ 108.  Plaintiff asserts that his prosecution was in "malicious or [in] bad faith" and resulted from Defendants carrying out an official municipal policy. Id. ¶ 145, 148.  The Town's attorney sent a letter to Plaintiff threatening further legal action after the verdict was rendered.  Id. ¶ 93.

Plaintiff alleges that there are other properties within the Town that in material aspects of

use are similar to the Albany Street property and subject to the same zoning restrictions, but are treated differently by the Town. Id. ¶¶ 119-134. The three properties Plaintiff mentions are D'Allesandro's Nursery and Landscaping ("D'Allesandro"), "Leitz's excavation businesses" ("Leitz"), and Tomaino Excavation ("Tomaino"). Id. ¶¶ 119, 125, 132. Plaintiff asserts that those properties store similar equipment, have similar trees, and are in close proximity to Plaintiff's property. See id. ¶¶ 120, 127, 132-33. Spaman testified that Defendants never cited these businesses for violation of applicable zoning law. Id. ¶¶ 124, 128, 132. Plaintiff asserts that Defendants selectively enforced the ordinance by commencing legal action against Plaintiff to deprive him of the use and enjoyment of his property. Id. ¶ 150.

Plaintiff's Amended Complaint sets forth the following causes of action: (1) malicious prosecution in violation of the First, Fourth, and Fourteenth Amendments against Spaman and Kinney in their individual capacities; (2) malicious prosecution in violation of the First, Fourth, and Fourteenth Amendments against the Town, Spaman, and Kinney in their official capacities; (3) class-of-one claim under the Equal Protection clause against Spaman and Kinney in their individual capacities; (4) class-of-one claim under the Equal Protection clause against the Town, Spaman, and Kinney in their official capacities; (5) selective enforcement in violation of the Equal Protection Clause against Spaman and Kinney in their individual capacities; (6) selective enforcement in violation of the Equal Protection Clause against the Town, Spaman, and Kinney in their official capacities; (7) abuse of process in violation of the Fourteenth Amendment against Spaman and Kinney in their individual capacities; (8) abuse of process in violation of the Fourteenth Amendment against the Town, Spaman, and Kinney in their official capacities; (9) violation of substantive due process in violation of the Fourteenth Amendment against Spaman and Kinney in their individual

capacities; (10) substantive due process against the Town, Spaman, and Kinney in violation of the

Fourteenth Amendment in their official capacities; (11) retaliation against protected speech in

violation of the First Amendment against Spaman and Kinney in their individual capacities; (12)

retaliation against protected speech in violation of the First Amendment against the Town, Spaman,

and Kinney in their official capacities; and (13) malicious prosecution under New York state law

against all Defendants.  <u>See</u> Am. Compl.

## III.    LEGAL STANDARD

### A.  Rule 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 663 (2009) (quoting <u>Bell Atl.

Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)); <u>see also</u> FED. R. CIV. P. 12(b)(6).  A court must

accept as true the factual allegations contained in a complaint and draw all inferences in favor of a

plaintiff.  <u>See</u> <u>Allaire Corp. v. Okumus</u>, 433 F.3d 248, 249-50 (2d Cir. 2006).  A complaint may be

dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a

claim to relief that is plausible on its face."  <u>Twombly</u>, 550 U.S. at 570.  Plausibility requires

"enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged

misconduct]."  <u>Id.</u> at 556.  The plausibility standard "asks for more than a sheer possibility that a

defendant has acted unlawfully."  <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).  "[T]he

pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands

more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  <u>Id.</u> (citing <u>Twombly</u>,

550 U.S. at 555).  Where a court is unable to infer more than the mere possibility of the alleged

misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. See id. at 678-79.

## IV. DISCUSSION

Defendants move to dismiss for failure to state a claim Plaintiff's malicious prosecution, Equal Protection Clause, abuse of process, substantive due process, and First Amendment retaliation claims. Mem. Defendants also argue that Spaman and Kinney are entitled to qualified immunity and that Plaintiff's claims against Spaman and Kinney in their official capacities should be dismissed. Id.

### A. Official Capacity Claims

Defendants argue that all claims against Spaman and Kinney in their official capacities should be dismissed because those claims are in effect claims against the Town and so are redundant. Mem. at 24-25. "A claim against a government officer in [his or her] official capacity is, and should be treated as, a claim against the entity that employs the officer." Mathie v. Fries, 121 F.3d 808, 818 (2d Cir. 1997); see also Booker v. Bd. of Educ., 238 F. Supp. 2d 469, 475 (N.D.N.Y. 2002) ("The real party in interest in an official capacity suit is the governmental entity and not the named official."). Accordingly, since the Town of Frankfort is named as a Defendant in this action, all claims against Spaman and Kinney in their official capacities are dismissed as redundant of the claims asserted against the Town.

### B. Personal Involvement of Kinney

With regard to Kinney, the Amended Complaint does not allege specific facts that show Kinney's personal involvement in depriving Plaintiff of his constitutional rights. See Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) ("It is well settled in this Circuit that 'personal

involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'") (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)). A supervisory official may not be held liable solely because they hold a position of authority within a municipality. See Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). Courts have held that "personal involvement . . . mean[s] direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." See id. (citing Wright, 21 F.3d at 501); see also Stancuna v. Town of Wallingford, 487 F. Supp. 2d 15, 21-22 (D. Conn. 2007) (finding no personal involvement of mayor in zoning enforcement activity against the plaintiff).

The only time Kinney is mentioned in the Amended Complaint is when Plaintiff mentions emails sent from Piazza to Kinney and Spaman. See, e.g., Am. Compl. ¶¶ 29, 35-36, 38. Plaintiff does not plead any facts alleging specific actions taken by Kinney, other than his role as a "policy maker." Id. ¶ 113. Plaintiff mentions actions by Spaman and through conclusory allegations attempts to link Kinney to those actions. Id. ¶ 44. Therefore, Plaintiff does not set forth any facts to show that Kinney was personally involved in the deprivation of Plaintiff's constitutional rights and all claims against Kinney are dismissed.

## C. Municipal Liability

In order to establish liability on behalf of a municipality under § 1983, a plaintiff must plead and prove that the deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012) (citing Monell v. Dept. of Soc. Servs. of the City of New York, 436 U.S. 658 (1978)). "The plaintiff must first prove the existence of a municipal policy or custom in order to show that the

municipality took some action that caused his injuries beyond merely employing the misbehaving officer. Second, the plaintiff must establish a causal connection—an 'affirmative link'—between the policy and the deprivation of his constitutional rights." Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985). Normally, a single incidence of unconstitutional conduct is insufficient to establish municipal liability, unless there is proof that the incident was caused by an existing, unconstitutional municipal policy that can be attributed to the municipal policymaker. City of Oklahoma v. Tuttle, 471 U.S. 808, 823-24 (1985); see also Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged constitutional violation.").

Municipal liability may attach where the harm alleged occurred as a result of a single decision, as long as the decision was made by a final policymaker that had sufficient power to act on behalf of the municipality. Pembaur v. Cincinnati, 475 U.S. 469, 480 (1986). As the Court reasoned in Pembaur, municipal liability "attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Id. In the present case, the Court finds that Plaintiff has adequately alleged that Spaman was an official with final decision-making authority and that she could have caused or contributed to the constitutional violations. Spaman identified herself as the head of a department with the final authority on determinations as to whether landowner's use of property conformed with Town code and zoning

law.[3]  Am. Compl. ¶¶ 19-23; see also Media Alliance, Inc. v. Mirch, No. 09-cv-0659, 2011 WL 3328532, at *12 (N.D.N.Y. Aug. 2, 2011) ("A reasonable jury could conclude, based upon [a high ranking official's] title and position, that he was an official with final decision-making authority and that he could have caused or contributed to the constitutional violations.") (citing Sebast v. Mahan, 754 F. Supp. 2d 423, 433 (N.D.N.Y. 2010)).  Additionally, in her July 2010 Notice and Order to Remedy, Spaman stated that "[Plaintiff's use] violates Town of Frankfort Zoning Code §88-8 . . . if [Plaintiff] fails to comply with this Notice and Order, the Town will take such further actions as it deems necessary and appropriate."  Dkt. No. 9-3 ("July 2010 Notice and Order").  This letter was issued to Plaintiff after Spaman inspected the Albany Road property through her duty and authority as Town Code Enforcement Officer.  Id.  Therefore, Plaintiff has adequately alleged that Spaman was a Town official with final decision-making authority and that she caused or contributed to the violations of Plaintiff's constitutional rights.

### D.  Malicious Prosecution

Defendants assert that Plaintiff has failed to state a malicious prosecution claim under § 1983 because he did not suffer a seizure of his person within the meaning of the Fourth Amendment.  Mem. at 9-11.

"To state a Section 1983 claim for malicious prosecution, the plaintiff must allege the four elements of malicious prosecution under New York state law and a 'sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights.'"  Manbeck v. Micka, 640 F.

---

[3] The Court notes the Town's website lists Spaman as the Code Officer for the Town's Codes Department.  "The Town Codes Department is responsible for the enforcement of all Town Ordinances [and] Zoning Laws."  Codes Department, Town of Frankfort, http://www.townoffrankfort.com/codes/ (last visited Mar. 31, 2016).

Supp. 2d 351, 369 (S.D.N.Y. 2009) (quoting Rohman v. N.Y.C. Transit Auth., 215 F.3d 208, 215

(2d Cir. 2000)). The Second Circuit has ruled that the deprivation of liberty must rise to the level

of a seizure under the Fourth Amendment:

> The Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person—i.e., the right to be free of unreasonable or unwarranted restraints on personal liberty. A plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must therefore show some deprivation of liberty consistent with the concept of "seizure."

Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 116. The elements of a malicious prosecution tort action

under New York state law in New York are "(1) the defendant either commenced or continued a

criminal proceeding against him; (2) that the proceeding terminated in his favor; (3) that there was

no probable cause for the criminal proceeding; and (4) that the criminal proceeding was instituted

with actual malice." Dawkins v. Williams, 511 F. Supp. 2d 248, 251 (N.D.N.Y. 2007) (Kahn, J.).

Plaintiff argues, based on dicta in Singer, that a § 1983 malicious prosecution claim may be

based on other constitutional rights than those guaranteed by the Fourth Amendment. Opp'n at 1

(quoting Singer, 63 F.3d at 116 n.5 ("It is theoretically possible . . . for a plaintiff to premise a

malicious prosecution claim on some other constitutional right [than the Fourth Amendment].")).

However, Plaintiff cites no case-law applying such approach. In numerous Second Circuit opinions

analyzing § 1983 malicious prosecution claims under the Fourth Amendment, the Court has focused

its analysis on whether a plaintiff's allegations are sufficient to state a claim for seizure of his person

under the Fourth Amendment. Swartz v. Insogna, 704 F.3d 105, 112 (2d Cir. 2013); Burg v.

Gosselin, 591 F.3d 95, 97 (2d Cir. 2010); Rohman, 215 F.3d at 215.

Plaintiff alleges that he was arraigned in May 2011. Am. Compl. ¶ 48. The proceedings

were adjourned while Plaintiff petitioned the Zoning Board of Appeals for a special use permit. Id.

¶ 58. From April 29, 2014 to May 1, 2014, a three day jury trial was held. <u>Id.</u> ¶ 71. Plaintiff alleges that he was required to appear in court no fewer than nine times during the three-day trial. <u>Id.</u> ¶ 108.

Both parties cite numerous cases on the issue of whether post-arraignment court appearances constitute a Fourth Amendment deprivation of liberty. Opp'n at 4-5; Reply at 3-4. In <u>Murphy v. Lynn</u>, 118 F.3d 938 (2d Cir. 1997), the Second Circuit held that a criminal defendant released post-arraignment was subject to a Fourth Amendment seizure where he was (1) restricted from traveling outside of the state and (2) obligated to make appearances in court whenever his attendance was required. 118 F.3d at 946. Following <u>Murphy</u>, district courts have been split on "whether a summons requiring a later court appearance—without further restraint—amounts to a Fourth Amendment seizure." <u>Burg</u>, 591 F.3d at 98; <u>see also</u> <u>Dellutri v. Vill. of Elmsford</u>, 895 F. Supp. 2d 555, 570 (S.D.N.Y. 2012) ("[T]he weight of district court authority in circumstances similar to those here—involving a plaintiff charged with non-felony offenses who was neither arraigned nor physically detained but who might have made a number of court appearances—counsels against finding a constitutional injury."); <u>Sassower v. City of White Plains</u>, 992 F. Supp. 652, 656 (S.D.N.Y. 1998) ("Municipal Defendants misconstrue the <u>Murphy</u> decision as requiring both an infringement on a plaintiff's right to travel and required court appearances in order to satisfy the 'seizure' element of a Section 1983 malicious prosecution claim.").

In <u>Burg</u>, the Second Circuit held "that the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure." 591 F.3d at 98. However, in that case, the defendant was only required to make one court appearance and the court stated that "[t]he number of appearances may bear upon whether there was a seizure." <u>Id.</u> After <u>Burg</u>, the Second Circuit stated in <u>Swartz</u> that

13

"[w]e have consistently held that a post-arraignment defendant who is 'obligated to appear in court in connection with [criminal] charges whenever his attendance [i]s required' suffers a Fourth Amendment deprivation of liberty." 704 F.3d at 112 (quoting Murphy, 118 F.3d at 947).

Despite the uncertainty in the law, the Court here finds that Plaintiff has adequately pleaded a deprivation of liberty. First, unlike Burg, where the defendant was only obligated to appear once, Plaintiff alleges that he was required to appear no fewer than nine times. Second, although Defendants argue that Plaintiff has not alleged any additional restraint on his liberty, such as whether he was released on bail or on his own recognizance, Reply at 4, Plaintiff asserts that he was released on his own recognizance under New York Criminal Procedure Law § 510.40, Opp'n at 5. While Plaintiff has not alleged such in his Amended Complaint, the Court observes that under New York Criminal Procedure Law § 510.10, "[w]hen a principal, whose future court attendance at a criminal action or proceeding is or may be required, initially comes under the control of a court, such court must . . . either release him on his own recognizance, fix bail or commit him to the custody of the sheriff." The Second Circuit has held that the requirement that a defendant released on his own recognizance "render himself at all times amenable to the orders and processes of the court" is sufficient to implicate the Fourth Amendment. Rohman, 215 F.3d at 216. Similarly, "obeying the conditions of bail suffice" as a post-arraignment seizure. Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir. 2003). Thus, drawing all inferences in Plaintiff's favor, the Court finds that Plaintiff has adequately pleaded a deprivation of liberty to survive Defendants' Motion to dismiss.

The Court also finds that Plaintiff has established the elements of a malicious prosecution claim under New York law. The first element of malicious prosecution is satisfied as Plaintiff was issued a criminal appearance ticket and appeared in court at least nine times, including the three-day

14

jury trial.  Am. Compl. ¶ 108, <u>see also</u> Dkt. Nos. 9-4; 9-5.  Turning to the second element, a jury found Plaintiff innocent of the criminal charges brought against him.  <u>Id.</u> ¶ 90.  The third element is satisfied as Spaman made multiple statements to Plaintiff that storing his equipment on the Albany Road property would be a conforming use of the property.  <u>Id.</u> ¶¶ 13-18.  Plaintiff pleads sufficient facts to show a lack of probable cause for Defendants taking action against him, as Plaintiff relies upon the Article 78 decision and his own conversations with Spaman to show that his actions were in compliance with applicable zoning law.  <u>Id.</u> ¶¶ 13-18, 57, 63, 76-77; Art. 78 Order at 8.  The fourth element is met, as it is plausible that Defendants acted with malice in prosecuting Plaintiff after it was determined in the Article 78 proceeding that his actions conformed with applicable law, as well as correspondence showing the Town may have acted because of complaints by Piazza.  <u>Id.</u> ¶¶ 29, 73, 90.  As such, the Court finds that Plaintiff has asserted a plausible claim for malicious prosecution.

### E.  Equal Protection

The equal protection clause "is essentially a direction that all persons similarly situated should be treated alike."  <u>Brady v. Town of Colchester</u>, 863 F.2d 205, 216 (2d Cir. 1988) (quoting <u>City of Cleburne v. Cleburne Living Ctr., Inc.</u>, 473 U.S. 432, 439 (1985)).  Generally, the Equal Protection Clause protects "suspect classes and fundamental interests against inequitable treatment, but other types of inequities and classifications may be justified by a showing of mere rationality."  <u>LeClair v. Saunders</u>, 627 F.2d 606, 611 (2d Cir. 1980) (citing <u>Dandridge v. Williams</u>, 397 U.S. 471, 487 (1970)).  However, an equal protection claim may be brought "by a 'class of one' where a plaintiff alleges that she has been 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'"  <u>African Trade & Info. Ctr., Inc. v.</u>

<u>Abromaitis</u>, 294 F.3d 355, 362-63 (2d Cir. 2002) (quoting <u>Vill. of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000)).

### 1. Class of One

Plaintiff asserts a "class of one" equal protection claim based on other properties that shared similar material attributes with Plaintiff's property. Defendants assert that Plaintiff's property does not share a high degree of similarity with the two properties Plaintiff establishes as comparators. Mem. at 13-14. Defendants also argue that Plaintiff has not proven that the restrictions or lack of restrictions on the properties occurred at the same time, and the Town has not waived its right to enforcement of zoning law on the comparators' properties just because the Town has not brought enforcement actions in the past. <u>Id.</u>

First, the Court will address the level of similarity between Plaintiff's property and the proposed comparators. "[A] class-of-one claim requires a plaintiff to show an extremely high degree of similarity between itself and its comparators." <u>Fortress Bible Church v. Feiner</u>, 694 F.3d 208, 222 (2d Cir. 2012); <u>see also</u> <u>Purze v. Vill. of Winthrop Harbor</u>, 286 F.3d 452, 455 (7th Cir. 2002) (stating that "[i]n order to succeed [on a class-of-one claim], the [plaintiffs] must demonstrate that they were treated differently than someone who is *prima facie* identical in all relevant respects"). The Leitz property shares many material similarities to Plaintiff's property. It falls within the same RA zoning district; contained gravel moving and earth moving equipment, dump trucks, and excavators in plain view; and stored equipment that was primarily used offsite. Am. Compl. ¶ 127. Defendants argue that the Leitz property had a special use permit that puts it in a different class with respect to enforcement actions. Mem. at 14. However, Plaintiff correctly observes that it is alleged that the special use permit was only for "the gravel pit component of

Leitz's excavation business" and Plaintiff did not have a gravel pit. Opp'n at 10; Am. Compl. ¶ 129. Thus, the gravel pit is not a relevant difference and the Leitz property passes the threshold as a comparator since while each property may have unique features, the relevant inquiry is whether the two properties are similar in type, use, and the type of equipment being stored. The Court also finds that Plaintiff has adequately pleaded that the Tomaino property is sufficiently similar to be considered a comparator. The Tomaino property was also within the RA District; contained excavation vehicles and equipment in plain view; and the excavation work was all done off-site. Am. Compl. ¶ 132. Defendants argue that Tomaino is distinct because it had been operating "for many years," Mem. at 14, but do not provide authority or argument for how that is a relevant distinction. See Telian v. Town of Delhi, No. 14-cv-945, 2015 WL 2249975, at *4 (N.D.N.Y. May 13, 2015) (finding fact that plaintiff's structures had been in place longer than comparator's did not make the projects dissimilar).

However, the Court finds that the D'Allesandro property is not sufficiently similar to Plaintiff's property to serve as a comparator. Although the D'Allesandro property was located within the same RA zone as Plaintiff's property, the D'Allesandro property deviates in a crucial factor necessary to be regarded as a comparator. While Plaintiff uses his property to store equipment that is used both on and off the property, the D'Allesandro property stored only equipment that was used on that property's tree farm. Am. Compl. ¶¶ 119-23; see also Cutie v. Sheehan, No. 11-cv-66, 2011 WL 4736358, at *7 (N.D.N.Y. Oct. 5, 2011) ("The plaintiff's burden on a 'class of one' claim is 'extremely high,' and a plaintiff cannot prevail absent a prima facie showing that he is 'identical in all relevant respects' to the individuals with whom he compares himself.").

17

Second, the Court finds that Plaintiff has sufficiently alleged there was no rational basis for the difference in treatment accorded to the Leitz and Tomaino properties. Here, Plaintiff and Leitz used their property in a similar fashion from 2007 to 2009 without incident; in 2010 Defendants began citing Plaintiff for zoning violations, although they have never cited Leitz. The Tomaino property was also used similarly to Plaintiff's property "for many years" without receiving a citation. As such, the Court finds that Plaintiff has identified at least one comparator who is sufficiently similar and has shown sudden adverse treatment that similarly situated parties were not subject to. Therefore, Plaintiff's class of one claim is allowed to proceed.

2. *Selective Enforcement*

A plaintiff may bring an equal protection claim based on a selective enforcement theory by demonstrating that: "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." LeClair, 627 F.2d at 609-10. The discrimination alleged must be intentional or purposeful. Id. at 609.

Determining whether parties are similarly situated is typically "a fact-intensive inquiry." Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 n.2 (2d Cir. 2001). As discussed *supra*, there is at least one comparator to which Plaintiff is similarity situated, satisfying the first prong of a selective enforcement claim. See Savino v. Town of Southeast, 983 F. Supp 2d 293, 305-06 n.4 (S.D.N.Y. 2013) (citing Neilson v. D'Angelis, 409 F.3d 100, 104-06 (2d Cir. 2005) ("The standard for showing similarly situated comparators is often held to be more stringent for 'class of one' claims than in selective enforcement claims.")). Because the Court finds that the Leitz property is

similarly situated under the more exacting "class of one" standard, Plaintiff has satisfied the standard under a selective enforcement theory.

Defendants assert that Plaintiff has failed to allege that the Town acted based upon impermissible considerations or with a bad faith intent to injure Plaintiff. Mem. at 16. Defendants claim that Plaintiff has not pleaded sufficient facts to support an allegation that "the Town had any animus or had expressed any ill-will regarding the [P]laintiff" and that the Town was freely able to take action in response to a zoning violation. Id. at 16-17.

Plaintiff's main argument in support of a finding of ill will focuses on Defendants' actions immediately after Plaintiff prevailed on the Article 78 proceeding in state court, where the court "ruled that Plaintiff did not need a special use permit because the [c]ourt was 'told' the equipment was agricultural." Opp'n at 15. Plaintiff pleads that soon thereafter, Defendants resumed their criminal action against him, even though the court's ruling clearly stated that the Albany Road property did not require a special use permit. Id. at 14-15. Further, Plaintiff states that Defendants put his property under surveillance to "spy on Plaintiff's farm." Am. Compl. ¶ 92. Defendants argue that since the criminal charges against Plaintiff were brought before Plaintiff exercised his constitutional rights, Plaintiff cannot show that the criminal charges were brought in retaliation for Plaintiff bringing the Article 78 proceeding. See Mem at 17. However, after the Article 78 proceeding was resolved in Plaintiff's favor, the original criminal proceeding continued, despite the Article 78 court's ruling the Plaintiff had complied with local zoning law. The Court finds that Plaintiff has pleaded sufficient facts to suggest that Defendants acted with ill will toward Plaintiff in enforcing the criminal charges against him to survive Defendants' Motion to dismiss.

**F. Substantive Due Process**

Plaintiff asserts a substantive due process claim based on Defendants' continued prosecution of Plaintiff following the Article 78 proceeding. Am. Compl. ¶¶ 156-61. Plaintiff asserts that the Article 78 proceeding created a property interest entitling Plaintiff to continue storing his equipment on the Albany Road property. Id. ¶¶ 158, 160.

In order to make a substantive due process claim in the context of a land use regulation case, a plaintiff must establish "(1) that he had a valid property interest in the granting of the permit, and (2) that the defendants infringed that property interest in an arbitrary or irrational manner." Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 503 (2d Cir. 2001). Conduct is arbitrary when it is not merely incorrect, but "shocks the conscience." O'Connor v. Pierson, 426 F.3d 187, 203 (2d Cir. 2005) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)).

In land use regulation cases, the Second Circuit "applies a 'clear entitlement' analysis to determine whether a landowner has a constitutionally cognizable property interest in the benefit sought." Clubside, Inc. v. Valentin, 468 F.3d 144, 152 (2d Cir. 2006). The clear entitlement analysis "focuses on the extent to which the deciding authority may exercise *discretion* in arriving at a decision, rather than on an estimate of the probability that the authority will make a specific decision." Id. at 153 (quoting Zahra v. Town of Southold, 48 F.3d 674, 680 (2d Cir. 1995)). "As a general rule, 'entitlement turns on whether the issuing authority lacks discretion to deny the permit, *i.e.*, is required to issue it upon ascertainment that certain objectively ascertainable criteria have been met.'" Harlen Assocs., 273 F.3d at 504 (quoting Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999)).

Here, Plaintiff has not established a "clear entitlement" to maintain excavation equipment on

the Albany Road property. The Frankfort Town Code § 88-8 provides uses as of right and special

uses that are permitted "in the discretion of the Board of Appeals." Frankfort Town Code § 88-8.

Plaintiff's application for a special use permit was denied by the ZBA. Am. Compl. ¶¶ 50-54; Dkt.

No. 14 ("ZBA Decision"). Plaintiff claims that the Article 78 Order on his appeal of that decision

created a property right in maintaining excavation equipment on his property. Opp'n at 20.

Assuming that Plaintiff is correct that an Article 78 proceeding can create a property right, see

Clubside, 468 F.3d at 157, Plaintiff has not shown that the Article 78 Order vested a property right

in him. The language of the decision is: "it's been proposed to me—or told to me that this is

agricultural equipment that is being stored on the property. If, in fact, it's agricultural equipment

that is being stored on the property, there is no need for a special use permit." Art. 78 Order at 8.

The Article 78 Order is therefore insufficient to create property interest.

Accordingly, Plaintiff's substantive due process claim is dismissed for failure to state a

claim.

### G. Retaliation

To establish a First Amendment retaliation claim under § 1983, a plaintiff must show (1)

that his conduct was protected under the First Amendment, and (2) that the defendant took some

adverse action that was motivated or substantially caused by plaintiff's exercise of his First

Amendment rights. Ferran v. Town of Grafton, 979 F. Supp. 944, 948 (N.D.N.Y. 1997) (citing

Gagliardi v. Vill. of Pawling, 18 F.3d 188, 194 (2d Cir. 1994)).

Plaintiff correctly identifies the Article 78 proceeding as protected under the First

Amendment. Opp'n at 23. There are many actions by a property owner that are "constitutionally

protected: commencing Article 78 proceedings, attending public meetings and hearings of the Board

of Trustees, the Planning Board and the Zoning Board of Appeals, and talking to the Building Inspector." Hampton Bays Connections, Inc. v. Duffy, 127 F. Supp. 2d 364, 373 (E.D.N.Y. 2001). The issue is whether Plaintiff pleads a plausible set of facts to establish the second element of a First Amendment retaliation claim. Plaintiff argues that soon after he prevailed in his Article 78 proceeding, Defendants retaliated against him by resuming their criminal prosecution against him. Opp'n at 18. Although it is true that Defendants commenced criminal proceedings against Plaintiff prior to Plaintiff's exercise of his First Amendment rights, similar to Plaintiff's argument in favor of his selective enforcement claim, the Court finds that it is plausible that Defendants' decision to resume criminal proceedings against Plaintiff following his victory in the Article 78 proceeding was motivated by retaliatory animus. Consequently, Defendants' Motion to dismiss Plaintiff's First Amendment retaliation claim is denied.

### H. Abuse of Process

Plaintiff's Amended Complaint also sets forth a claim for abuse of process. Am. Compl. ¶¶ 149-53, 154-55. An abuse-of-process claim can give rise to liability under § 1983. Savino v. City of New York, 331 F.3d 63, 76-77 (2d Cir. 2003); see also Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994). "In New York, a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." Cook, 41 F.3d at 80; see also Zarro v. Spitzer, No. 06-CV-1166, 2009 WL 3165761, at *6 (N.D.N.Y. Sept. 25, 2009). "[T]he gist of abuse of process is the improper use of process after it is regularly issued." Cook, 41 F.3d at 80. "In New York, such wrongful purposes have included economic harm, extortion, blackmail, and retribution." Ketchuck

22

v. Boyer, No. 10-CV-0870, 2011 WL 5080404, at *7 (N.D.N.Y. Oct. 25, 2011).

Defendants argue that Plaintiff fails to satisfy the collateral objective element. Mem. at 18. They contend that Plaintiff cannot satisfy the collateral objective element by asserting that Defendants acted to appease Piazza. Id. Defendants state that even if they were trying to appease Piazza, their conduct is only actionable if the enforcement is a sham continued with an intent to do harm without excuse or justification. Id. Plaintiff argues that the collateral objective element is satisfied by Defendants' retaliation against him after he was successful in the Article 78 proceeding, by continuing their abusive prosecution against him. Opp'n at 19. Plaintiff also asserts that Piazza's involvement and "threats" influencing the Defendants to act for a wrongful purpose satisfy the collateral objective prong. Id. at 18.

For purposes of this Motion and viewing the facts in the light most favorable to Plaintiff, the Court finds that there are sufficient facts to establish a possible collateral objective. Plaintiff notes that he was the first person subject to a jury trial on zoning matters within the Town's jurisdiction and also points to numerous email exchanges between Defendants and Piazza. Am. Compl. ¶¶ 28, 35, 37-38, 42. The emails between Piazza and Defendants mention various agreements, promises, and threats regarding enforcement action being taken against the Albany Road property.

Although the parties do not contest the other elements of an abuse of process claim, the Court finds these elements satisfied. Under the first element, Plaintiff received an appearance ticket to appear in court on criminal charges, which courts have held constitutes a regularly issued legal process. Am. Compl. ¶ 40; see, e.g., Hoffman v. Town of South Hampton, 893 F. Supp. 2d 438, 447 (E.D.N.Y. 2012) (noting that appearance tickets and criminal informations constitute regularly issued legal process). The second element is also satisfied as discussed *supra*, as both the Article 78

decision and the differential treatment of Plaintiff from similarly situated properties raises the issue of whether Defendants' actions were intended to appease Piazza at the cost of harming Plaintiff or were taken in retaliation of Plaintiff's victory in the Article 78 proceeding. See id. ¶¶ 28, 29, 35, 37, 38, 42; Dkt. Nos. 9-2; 9-5; see also Savino, 331 F.3d at 77 ("[T]he defendants had an improper purpose in instigating the action ... [and] that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution."). Plaintiff has adequately pleaded a plausible claim for abuse of process.

### I. Qualified Immunity

Defendants argue that Spaman is entitled to qualified immunity. Mem. at 23-24. Plaintiff asserts that Spaman acted without a good faith belief that her actions were constitutional, and that her actions should have been guided by "clearly established" law. Opp'n at 24. Plaintiff also points out that the Article 78 decision should have made Spaman aware that there was a possible discrepancy in her interpretation of the law and policies of the RA District. Id.

A qualified immunity defense is established if "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Salim v. Proulx, 93 F.3d 86, 89 (2d Cir. 1996). Under the facts presented in the Amended Complaint, the Court cannot say as a matter of law that a reasonable official in Defendant Spaman's position would not have understood that it would be wrong to irrationally treat the Plaintiff and his property differently than the other owners and properties discussed *infra*. Therefore, at this stage of the litigation, Spaman is not entitled to qualified immunity.

**III.     CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion (Dkt No. 13) to dismiss is **GRANTED in part**, as to Plaintiff's substantive due process claims, all claims against Kinney in his official and individual capacities, and all claims against Spaman in her official capacity; and **DENIED in part**, as to Plaintiff's malicious prosecution, equal protection, First Amendment retaliation, and abuse of process claims, as well as the issue of qualified immunity, and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:       March 31, 2016
             Albany, New York

Lawrence E. Kahn
U.S. District Judge